IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VICKI DOWLEN )
)
v. ) No. 3:08-0194
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which defendant has responded with its own motion for judgment (Docket Entry No. 19). Plaintiff has further filed a reply brief (Docket Entry No. 26) in support of her motion, and defendant has filed a supplemental response (Docket Entry No. 23) in support of its motion. Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 9),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion be DENIED; that defendant's motion be GRANTED; and, that the SSA's decision be AFFIRMED.

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

# I. Introduction

Plaintiff filed her DIB application on October 1, 2002, alleging disability beginning September 8, 2002, due to hip, leg, and knee pain along with an increase in blood pressure with the pain (Tr. 56-59, 68). Plaintiff's application was denied at both the initial and reconsideration phases of state agency review (Tr. 37-41, 42-45), prompting her filing of a request for *de novo* hearing and review by an Administrative Law Judge ("ALJ"). The case was heard on September 15, 2005, when plaintiff appeared with counsel, and testimony was received from plaintiff and an impartial vocational expert (Tr. 489-532). At the conclusion of the hearing, the ALJ took the case under advisement. On February 8, 2006, the ALJ issued a written decision in which he denied plaintiff's claim to disability benefits (Tr. 20-26). The decision contains the following enumerated findings:

1. The claimant met the disability insured status requirements of the Act on September 8, 2002, her alleged disability onset date, and she continues to meet them at least through the date of this decision.

2. The claimant has not engaged in any substantial gainful activity since her alleged disability onset date.

3. The claimant has medically determined lumbar spondylosis, sacrum disorder, bursitis and impingement syndrome of the left shoulder, seizure disorder/syncope, chronic spinal pain syndrome, osteoarthritis, trochanteric bursitis and avascular necrosis of the right hip, carpal tunnel syndrome bilateral, and she is status post acromioplasty of the left shoulder and carpal tunnel release bilateral. These impairments are considered to be "severe" under the Regulations.

4. The medical evidence does not show the claimant has an impairment or combination of impairments that meets or medically equals the requirements for any impairment listed in the Listing of Impairments contained in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's statements concerning her impairments, pain, and functional limitations are not fully credible in light of the objective medical findings contained in the record by treating and consulting physicians, and based on the claimant's own description of her daily activities and lifestyle (20 CFR 404.1529).

6. The claimant retains the residual functional capacity to perform the physical exertion and nonexertional requirements of a limited range of sedentary work as described above (20 CFR 404.1545).

7. The claimant's impairments prevent her from performing her past relevant work.

8. The claimant's residual functional capacity for the full range of sedentary work is reduced by the additional limitations stated in Finding No. 6.

9. The claimant is defined as a "younger individual" under the Regulations (20 CFR 404.1563).

10. The claimant has a limited education (20 CFR 404.1564).

11. The claimant has acquired no work skills that are transferable to sedentary, skilled work (20 CFR 404.1568).

12. Based on an exertional capacity for sedentary work and the claimant's age, education, and work background, Grid Rules 201.26 and 201.20, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4 direct a conclusion of "not disabled."

13. Although additional nonexertional limitations do not allow the claimant to perform all of the requirements of sedentary work, there is a significant number of jobs existing in the national economy to which she can adapt and perform. Examples of such jobs are inspector, information clerk, and administration support (Framework of Grid Rules 201.26 and 201.20).

14. The claimant was not under a "disability," as defined in the Social Security Act and Regulations, at any time through the date of this decision (20 CFR 404.1520(f)).

(Tr. 24-25)

On February 11, 2008, the SSA's Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-9), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Plaintiff was born on May 19, 1959 (Tr. 56), and was 46 years old at the time of her hearing before the ALJ. She was educated through the 9th grade (Tr. 493), and her past relevant work includes jobs as a cashier checker, retail store manager, fast food cook, fast food worker, fabricating assembler, hand-packager, hospital cleaner and home attendant. (Tr. 492) She alleges the onset of disability in September 2002.

### A. Medical Evidence

The following summary is taken in large measure from defendant's brief (Docket Entry No. 20 at 4-6), with some supplementation by the undersigned.

The medical record contains MRI results documenting osteoarthritis and trochanteric bursitis of plaintiff's right hip, as well as lumbar spondylosis at L3 and L4 (Tr. 217, 218, 220). Examination of plaintiff's right hip revealed no bone, joint, or soft tissue abnormality, but was essentially normal (Tr. 220, 238). An x-ray of her right hip revealed mild degenerative changes (Tr. 247). An MRI of the lumbar spine was normal (Tr. 221). EMG test results showed slight right peroneal motor nerve amplitude reduction, but was otherwise essentially normal (Tr. 392-93, 233-34). An MRI exam for lower back pain and sciatica was essentially normal (Tr. 433). Nonetheless, plaintiff has demonstrated objective

4

signs of pain on internal rotation of the right hip; tenderness around the trochanter, buttocks and sciatic notch; tightness and spasm of the paraspinal muscles; decreased sensation in the right leg; and an antalgic gait. (Tr. 155, 166-72, 177, 192) She has required an assistive device to ambulate (Tr. 372). Plaintiff also has left shoulder bursitis and she is status post-acromioplasty for chronic impingement syndrome of her left shoulder (Tr. 428-29). Plaintiff also has carpal tunnel syndrome and is status post-bilateral carpal tunnel release (Tr. 431, 432, 446-47).

Plaintiff has a history of seizures treated with medication (Tr. 372). She experienced several episodes of lapses in consciousness during a short period in 2005, after her Topamax was discontinued by a pain clinic physician (Tr. 374). After re-institution of plaintiff's Topamax prescription, the notes and assessment of treating neurologist Robert J. Fallis, M.D., indicate that plaintiff's seizures were sufficiently controlled to present no work-related restrictions (Tr. 369-73).

On December 3, 2003, Dr. John C. Nwofia, plaintiff's treating physician and a specialist in pain management and spinal disorders, opined that plaintiff's combination of impairments limited her to: lifting/carrying no more than 15 pounds occasionally, less than 5 pounds frequently; standing/walking no more than 4 hours total, and no more than 15 minutes at a time; sitting no more than 4 hours total, and no more than 30 minutes at a time; occasionally climbing, balancing, crouching and kneeling, and never stooping or crawling; reaching, handling, feeling, pushing, and pulling with a frequency that is less than repetitive; and avoiding heights, moving machinery, and vibration. (Tr. 439-41)

Dr. Nwofia again assessed plaintiff's work-related abilities on July 22, 2005, opining that her back and upper extremity impairments restricted her to lifting/carrying 20

5

pounds frequently and occasionally, standing/walking at least 2 hours out of an 8-hour day, occasionally using her upper and lower extremities for pushing/pulling, and occasionally climbing and balancing (Tr. 378-81). He further opined that plaintiff must periodically alternate sitting and standing to relieve pain or discomfort. (Tr. 379)

On September 22, 2005, Dr. John W. Bacon, plaintiff's treating physician and orthopaedic surgeon, completed an assessment of work-related abilities in which he opined that plaintiff could occasionally lift 10 pounds, stand/walk at least 4 out of 8 hours, sit for 4 out of 8 hours, and occasionally perform postural activities; in addition, he opined that plaintiff needed to avoid reaching, pushing, pulling, and working around heights. (Tr. 443-45)

In reaching his finding of plaintiff's residual functional capacity, the ALJ gave controlling weight to the opinion of Dr. Nwofia, citing its consistency with the opinions of each of the other treating physicians. (Tr. 23)

B. Testimonial Evidence

The ALJ adequately summarized plaintiff's hearing testimony, as well as her written submissions to the agency, as follows:

> At the hearing, the claimant alleged disability due to low back, right hip, and right lower extremity pain. She said she has used a cane, prescribed by her doctor, for 2 years due to back and hip problems. She does not use the cane at home. Ms. Dowlen testified her back and leg pain limits her to standing 2 to 3 minutes and walking no more than 30 minutes.
>
> She also reported symptoms of right carpal tunnel syndrome. She said she has been unable to lift anything since undergoing carpal tunnel release surgery.
>
> The claimant reported seizures occurring 2 to 3 times per month, characterized by shaking, loss of consciousness for 5 to 6 seconds, and black

6

spots before her eyes. She said she lost consciousness due to seizures 6 or 7 times in 2004.

The claimant reported she wakes with headaches in the morning several times per week. She said she takes over-the-counter pain medication, which stops the pain.

Regarding her daily activities, the claimant testified she makes her bed, lets out the dog, stands outside, takes her medications, naps, watches television, and reads. Ms. Dowlen testified she has looked for jobs, but no one will hire her due to her medical condition.

The claimant testified to limited activities of daily living. However, her written statements of record and oral statements to physicians describing her daily activities and lifestyle indicate a wider range of activities. The claimant reports she independently cares for her personal needs, prepares lunch for her husband to take to work, washes dishes, performs laundry tasks, makes the bed, prepares simple meals, cleans one room per day, engages in craft activities 2 to 3 times per week, and visits in her home.

(Tr. 22)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

7

1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

8

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

9

In support of her motion for reversal of defendant's decision, plaintiff alleges errors on the part of both the ALJ and the Appeals Council, some of which are supported by references to evidence that, while made a part of the administrative record as exhibits supporting her request for Appeals Council review (Tr. 5, 449-88), was not before the ALJ. As referenced above, it is the ALJ's decision which is the subject of review here, as his became the "final decision of the Commissioner of Social Security" once the Appeals Council declined review in the case. See 42 U.S.C. § 405(g). Accordingly, error on the part of the Appeals Council is not properly alleged in this case, nor may the court properly consider evidence that was submitted for the first time before the Appeals Council in deciding whether to affirm, modify, or reverse the ALJ's decision under the fourth sentence of § 405(g). See, e.g., Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); see also Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 753-54 (E.D. Mich. 2003). Rather, it is the *prejudgment* remand authorized by the sixth sentence of § 405(g) that provides plaintiff's only remedy in seeking to have the "new" evidence considered in support of her current claim. See Cooper, supra.

Sentence six of § 405(g) authorizes the court to order a return to the agency for the ALJ to consider evidence that was not previously before him, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The evidence submitted to the Appeals Council in this case includes, *inter alia*, operative notes documenting the implantation of a spinal cord stimulator, first on a trial basis and then on a final basis (Tr. 451-55, 465-66); a note documenting arthroscopic surgery to correct torn

meniscus and patellar cartilage defects in plaintiff's right knee (Tr. 457-58); records of her hospitalization due to a pulmonary embolism (Tr. 459-64, 485-86); an opinion from Dr. Bacon that plaintiff should use her upper extremities less than two hours out of an eight-hour workday (Tr. 484); and, what appears to be a prescription for a motorized wheelchair (Tr. 483).

The party seeking remand bears the burden of demonstrating newness, materiality, and good cause. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006). The evidence in question here is clearly new, as it was not in existence at the time of plaintiff's hearing or the ALJ's decision. See id. at 483-84 (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)). "Such evidence, in turn, is deemed 'material' if 'there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Id. Plaintiff contends, in her reply brief (Docket Entry No. 26 at 5), that this new evidence is material "[s]ince the new evidence related to Plaintiff's hands, knee, shoulder, back, and chronic pain, and since all of these conditions predated the ALJ hearing[.]" However, it is not sufficient to establish the mere potential for materiality. The new evidence must be probative of the severity of plaintiff's impairments, greater than previously demonstrated, during the period considered by the ALJ; evidence which establishes only that the same impairments worsened in severity after the hearing is not material for these purposes. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 478 (6th Cir. 2003).

Clearly, this standard for materiality is not met by the apparent prescription of a motorized wheelchair nearly a year after the ALJ's decision was issued, or the pulmonary

11

embolism suffered nearly six months after that date. Nor is the standard met by Dr. Bacon's affirmative response to the conclusory question whether plaintiff "should ... use her upper extremities less than 1/4 of an 8-hour work day" (Tr. 484), inasmuch as this response was given six months after the ALJ's decision and roughly one year after plaintiff's bilateral carpal tunnel release surgery and left shoulder acromioplasty, yet Dr. Bacon had assessed (and the ALJ credited) the ability to lift/carry 10 pounds up to one-third of an 8-hour workday and unlimited ability to handle and feel (Tr. 443-45) just 10 days prior to the release surgery (Tr. 447), and 20 days after the acromioplasty (Tr. 429). Moreover, plaintiff's arthroscopic back and knee surgeries to address her pain complaints in those regions would not appear reasonably likely to persuade the ALJ to weigh her pre-decision pain complaints any more favorably to plaintiff than he did on the record before him. Specifically, after giving controlling weight to the opinion of Dr. Nwofia and noting its consistency with the opinions of Dr. Bacon and plaintiff's other treating sources, the ALJ made the following findings pertaining to plaintiff's pain:

> After careful consideration of the entire record, I find the claimant is prevented from standing/walking a total of 6 out of 8 hours and lifting/carrying more than 10 pounds occasionally due to back and upper and lower extremity pain, paraspinal muscle tightness and spasms, lower extremity sensory deficit, and gait disturbance. She is restricted against work at heights or around moving machinery, and driving, due to the use of narcotic pain medication.

(Tr. 23) This is not a case where subjective complaints of pain were largely discounted because of only conservative treatment measures and a general lack of objective documentation. As reflected in the foregoing language and the ALJ's previous finding of objective evidence of the pain itself (Tr. 22), plaintiff's pain complaints were regarded quite

seriously by the ALJ, who found them sufficiently credible to rate a limitation to less than the full range of sedentary work (Tr. 23). The undersigned finds it unlikely that the new evidence in this case would persuade the ALJ to find that even this range of work would have been beyond plaintiff's capabilities during the period at issue.

In sum, the new evidence submitted to the Appeals Council lacks materiality, and therefore cannot be the subject of a sentence six remand by this court. Likewise, plaintiff's argument that the ALJ summarily dismissed her allegations of pain at or above the moderately severe level (Docket Entry No. 12 at 3-4) is belied by the above-cited portions of the ALJ's decision, and is thus without merit.

As to plaintiff's remaining arguments for outright reversal of the ALJ's decision on the record as it stood before him, it is clear that the ALJ's failure to discuss the weight he gave to plaintiff's complaint of medication-related drowsiness is not indicative of his inattention to this alleged side effect. Indeed, the ALJ included a work restriction against driving, and against exposure to unprotected heights and moving machinery, specifically in reference to plaintiff's use of narcotic pain medication. (Tr. 23) Moreover, the ALJ's colloquy with the vocational expert at plaintiff's hearing clearly reflects his understanding that the alleged need to nap 2-3 hours per day would be work-prohibitive (Tr. 524, 527-28), and the findings made in his decision just as clearly reflect his belief that such a level of medication-related drowsiness is not credibly suggested by the medical record. As defendant notes, there are no significant complaints of medication side effects documented in the medical record. Accordingly, this argument is without merit.

Plaintiff next alleges that the sedentary jobs identified by the vocational expert

13

and relied upon by the ALJ were identified in response to a hypothetical allowance for lifting 20 pounds occasionally and frequently, whereas the ALJ found plaintiff to be limited to lifting only 10 pounds occasionally. While it is true that the ALJ did elicit the expert's testimony to available jobs based on a 20-pound lifting restriction, he later secured confirmation from the expert that the jobs identified would remain available if the hypothetical were changed to allow frequent lifting of less than 5 pounds (Tr. 522-23). Of course, this subsequent hypothetical does not resolve the discrepancy between the ALJ's finding of plaintiff's ability to occasionally lift only 10 pounds, and the testimony establishing the availability of other work accommodating the restriction to occasional lifting of 15-20 pounds. However, of the jobs identified by the expert, the ALJ only relied upon those identified as sedentary, an exertional category which is defined by regulation as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).[2] Accordingly, the undersigned finds no reversible error in the ALJ's reliance on the sedentary jobs of inspector, information clerk, and administrative support, as compatible with plaintiff's residual functional capacity for "a broad range of sedentary work." (Tr. 23)

        Finally, plaintiff argues that if the sedentary jobs identified by the vocational expert as existing in the Tennessee economy were confined instead to the economy of the middle Tennessee region, the total number of jobs would drop from 2,050 to less than 700 (Tr. 526-27), a number that should not be deemed "significant" for purposes of defendant's

---

[2]Section 404.1567 provides that its definition of "sedentary" has the same meaning as the definition utilized in the Department of Labor's *Dictionary of Occupational Titles*, the resource upon which the vocational expert's testimony was based (Tr. 493).

14

burden at step five of the sequential evaluation process. Plaintiff further argues, without any citation to authority, that "[s]ince the Plaintiff cannot drive due to her use of narcotic pain medication (R 23), she would be forced to rely upon public transportation to get to the workplace, further reducing the number of available jobs." (Docket Entry No. 12 at 6) This latter argument is speculative, and lacks support in the case law. See, e.g., Mingus v. Comm'r of Soc. Sec., 1999 WL 644341, at *4-5 (6th Cir. Aug. 19, 1999) (affirming ALJ's ruling that evidence of inability to drive due to poor eyesight is irrelevant to the disability inquiry) (citing Harmon v. Apfel, 168 F.3d 289 (6th Cir. 1999)). In any event, it is clear that defendant's step five burden is satisfied by proof of a significant number of jobs in the national economy, regardless of the corresponding regional numbers. 42 U.S.C. § 423(d)(2)(A); Harmon, 168 F.3d at 292. The ALJ cited both the numbers of jobs within the state (2,050) and within the nation (150,000) in support of his finding of a significant number of other jobs which plaintiff could perform (Tr. 24). Thus, plaintiff's argument based on proof that surveys a much more restricted territory is unavailing.[3]

        In sum, the undersigned finds that a sentence six remand for consideration of new and material evidence is not warranted in this case, and that substantial evidence supports the ALJ's decision on the record that was before him, requiring this court to affirm that decision under sentence four of 42 U.S.C. § 405(g).

---

[3] Even if plaintiff's argument had merit, there is authority for the proposition that a significant number of jobs may be found from figures even less weighty than those in this case. See, e.g., Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (finding the totals of 174 local, 1,600 state, and 80,000 national jobs "significant").

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED; that defendant's motion for judgment on the pleadings be GRANTED; and, that the decision of the SSA be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 24th day of March, 2009.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE